No. 89-588

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

TERRY VANLUCHENE, JANE VANLUCHENE,
PAULA OSTROM, KATHERINE VANLUCHENE,
and DEREK VANLUCHENE, as individuals;
TERRY VANLUCHENE and JANE VANLUCHENE
as Personal Representatives of the
Estate of Ryan VanLuchene, Deceased,

Plaintiffs and Appellants,

-vs-

STATE OF MONTANA,

Defendant and Respondent.



FILED

SEP 4 1990

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM:   District Court of the Ninth Judicial District,
               In and for the County of Pondera,
               The Honorable R.D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

          For Appellants:

          Kenneth R. Olson, Great Falls, Montana

          For Respondent:

          Maxon R. Davis, Paul R. Haffeman, Cure, Borer &
          Davis, Great Falls, Montana

          Amicus Attorneys:     _____

          W. William Leaphart, Leaphart Law Firm, Helena,
          Montana (Bartruff)

                         Submitted on Briefs:  May 24, 1990

                         Decided:  September 4, 1990

Filed:

_____

                         Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

This appeal arises from the summary disposition of appellants' claims in the District Court of the Ninth Judicial District, Pondera County. We affirm.

On June 11, 1984, Robert Hornback pled guilty to felony sexual assault following his attack on a young boy in Libby. Hornback was sentenced to five years in Montana State Prison with a dangerous offender designation. Hornback served his full sentence reduced only by a statutory allowance for good time (§ 53-30-105, MCA) and by 132 days for time served prior to conviction. Hornback was released when his sentence expired on May 22, 1987. On August 31, 1987, Hornback sexually assaulted and killed eight-year-old Ryan VanLuchene in Libby. Hornback pled guilty to assaulting and killing Ryan and was sentenced to 200 years in the Montana State Prison.

Appellants are Ryan's parents, sisters and brother. Appellants initially filed a tort claim before the Department of Administration. Following denial of that claim, appellants brought this action in District Court. Respondent moved for dismissal pursuant to Rule 12(b)(6), M.R.Civ.P. The District Court considered matters not contained within the pleadings in rendering its judgment and for that reason converted respondent's motion to dismiss to a motion for summary judgment pursuant to Rule 56, M.R.Civ.P.

The District Court found that appellants' theories of proximate cause were too speculative and that respondent's acts

2

were not the proximate cause of appellants' injuries. The lower court further found that respondent has no duty to insure the rehabilitation of prisoners and cannot reasonably detain prisoners beyond the expiration of their sentences. The District Court concluded that respondent had no duty to warn of Hornback's release.

The first issue raised by appellants is whether the District Court erred in granting summary judgment in favor of respondent. Summary judgment is properly rendered when there are no genuine issues of material fact. Bohnsack v. Hi-Noon Petroleum, Inc. (Mont. 1990), 793 P.2d 815, 817, 47 St.Rep. 1125, 1127. Summary judgment is proper in this case because there are no significant factual disputes.

We restate the remaining issues raised by appellants as:

1.   Do alleged violations of certain statutory provisions by respondent amount to negligence per se?

2.   Does respondent have a duty, the breach of which is recoverable in tort, to avoid the release of prisoners known to it to be suffering from psychological problems which make the prisoners a danger to society?

3.   Does respondent have a duty to effectively warn society of the danger represented by recently released prisoners who are presently dangerous and/or to take whatever other steps are reasonably necessary under the circumstances to protect society?

Specifically, appellants argue the acts enumerated below constituted negligence by respondent:

3

1. Hornback did not receive therapy through the sexual offender treatment program despite the specific finding of the sentencing court that he needed help. Appellants claim Hornback was asked to leave the group by the other members and did so with the consent of prison authorities.

2. Prison authorities allegedly ignored repeated sexual assaults committed against Hornback that had the effect of exacerbating his pre-existing psychological problems.

3. Hornback was not disciplined for consensual homosexual contact which discipline could have resulted in reduction or elimination of his good time allowance.

4. Although allegedly aware of Hornback's threats to murder a young blond child in the Libby area, prison officials made no effort to detain Hornback past the expiration of his sentence.

5. Prison authorities failed to issue a warning concurrent with Hornback's release.

## I.

Appellants assert the following impose a duty upon the State, the breach of which is actionable in tort:

> No barbarous punishments may be prescribed for an inmate of the state prison, nor shall an inmate, as punishment, be deprived of his normal provision of food while being compelled to work the usual number of hours per day.

Section 53-30-104, MCA.

> The correctional policy of the state of Montana is to protect society by preventing crime through punishment and rehabilitation of the convicted. The legislature finds that an individual is responsible for and must be held accountable for his actions. Corrections laws and programs must be implemented to impress upon each individual his responsibility for obeying the law. To

4

achieve this end, it is the policy of the state to assure that prosecution of criminal offenses occurs whenever probable cause exists and that punishment of the convicted is certain, timely, and consistent. Furthermore, it is the state's policy that persons convicted of a crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities.

Section 46-18-101(2), MCA.

Dangerous offenders who habitually violate the law and victimize the public shall be removed from society and correctively treated in custody for long terms as needed. Other offenders shall be dealt with by probation, suspended sentence, or fine whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the individual. Whenever possible, sentences for offenders shall include restitution to the victim, payment of costs as provided in 46-18-232, and payment of costs of court-appointed counsel as provided in 46-8-113.

Section 46-18-101(3)(b), MCA.

The department shall utilize at maximum efficiency the resources of state government in a coordinated effort to:

(1)   restore the physically or mentally disabled;

(2)   rehabilitate the violators of law;

. . .

(6)   coordinate and apply the principles of modern institutional administration to the institutions of the state.

Section 53-1-201, MCA.

The institution at Deer Lodge is the state prison and as its primary function provides facilities for the custody, treatment, training, and rehabilitation of adult criminal offenders.

Section 53-30-101, MCA.

The essence of appellants' argument is that respondent's violation of the above statutes constitutes negligence. A

5

statutory infraction may amount to negligence per se. Thayer v. Hicks (Mont. 1990), 793 P.2d 784, 792, 47 St.Rep. 1082, 1091.

> The violation of statutes is negligence as a matter of law when the purpose of the statute is to protect a class of persons, the plaintiff is a member of that class, and the defendant is a person against whom a duty is imposed. (Citations omitted.) The purpose of the statute also must be to protect against the kind of injury received by the plaintiff.

Nehring v. LaCounte (1986), 219 Mont. 462, 468, 712 P.2d 1329, 1333. To prevail in a negligence per se case, the plaintiff must prove:

1. The defendant violated the particular statute.

2. The statute was enacted to protect a specific class of persons.

3. Plaintiff is a member of that class.

4. Plaintiff's injury is of the sort the statute was enacted to prevent.

5. The statute was intended to regulate members of defendant's class. See, Nehring v. LaCounte, supra.

In the instant case, appellants fail to establish that respondent violated any of the enumerated provisions. Appellants state no facts from which we can conclude Hornback was subjected to barbarous punishment. Hornback was allegedly the victim of repeated sexual assaults while incarcerated at Montana State Prison. Appellants' contention that these assaults were part of Hornback's punishment lacks merit. The argument advanced by appellant would require a finding that these assaults were part of the punishment imposed upon Hornback by respondent. This we

decline to do.

Appellants further contend respondent has a duty to rehabilitate prisoners. We disagree. The above-cited statutes clearly provide for use of multitudinous State resources in an effort to rehabilitate prisoners. The State is not a guarantor of its rehabilitation facilities and we will not impose such on obligation upon it.

## II.

Appellants assert respondent has a duty to avoid the release of prisoners whose mental illnesses render them dangerous to society. Section 46-18-801, MCA, states that:

> (1) Conviction of any offense shall not deprive the offender of any civil or constitutional rights except as they shall be specifically enumerated by the sentencing judge as necessary conditions of the sentence directed toward the objectives of rehabilitation and the protection of society.

> (2) No person shall suffer any civil or constitutional disability not specifically included by the sentencing judge in his order of sentence.

> (3) When a person has been deprived of any of his civil or constitutional rights by reason of conviction for an offense and his sentence has expired or he has been pardoned, he shall be restored to all civil rights and full citizenship, the same as if such conviction had not occurred.

Clearly, once Hornback's sentence had expired, respondent had no choice but to release him from Montana State Prison. To have refused his release would have violated Hornback's constitutional rights. Appellants assert respondent should have disciplined Hornback for alleged homosexual activity and could have initiated civil commitment proceedings against Hornback to delay his release

7

into society. .Neither argument persuades us that respondent has any duty to detain a prisoner once his sentence has expired.

III.

Appellants contend respondent should have issued a warning regarding Hornback's release from Montana State Prison. We note with approval the holding of the California Supreme Court in Thompson v. County of Alameda (Cal. 1980), 614 P.2d 728. In that case, a juvenile offender who had repeatedly threatened to kill a young child was released to his mother's custody by the defendant. Defendant issued no warning regarding the offender's release. Within 24 hours of his release, the youth murdered the young son of his mother's neighbors. Thompson, 614 P.2d at 730. Plaintiff parents sued alleging defendant had a duty to warn of the offender's release in light of his threats, citing Tarasoff v. Regents of University of California (Cal. 1976), 551 P.2d 334. The Thompson court foresaw:

> [S]ignificant practical obstacles in the imposition of a duty in the form that plaintiffs seek, concluding that it would be unwieldy and of little practical value. As previously indicated a large number of persons are released and supervised on probation and parole each year in this state. Notification to the public at large of the release of each offender who has a history of violence and who has made a generalized threat at some time during incarceration or while under supervision would, in our view, produce a cacophony of warnings that by reason of their sheer volume would add little to the effective protection of the public.

Thompson, 614 P.2d at 735.

The merit of issuing a warning to the general public in the instant case is equally questionable. Appellants do not set forth how their actions would have differed had respondent made a general

8

public warning. The legislature, after considering this issue in its last regular session, enacted the Sexual Offender Registration Act, codified at § 46-23-501, et seq., MCA.

> A sexual offender who is released from the custody of the department of institutions or the department of family services must be informed in writing prior to release of his duty to register under 46-18-254, 46-18-255, and this part by the official in charge of the place of confinement. The official shall obtain the address where the person expects to reside upon his release and report the address to the department of institutions. The department shall inform the appropriate law enforcement agency having local jurisdiction where the person expects to reside.

Section 46-23-503, MCA.

The legislature recognized the futility of issuing a public warning regarding the release of every potentially violent offender. It is truly unfortunate and tragic that Ryan VanLuchene died by the reprehensible, violent, senseless acts of an ex-convict. Recovering monetary damages in tort for the death of Ryan by holding the State responsible is not the law. The law and Montana's criminal justice system have, however, seen to it that Robert Hornback will pay something -- his life will be spent behind bars.

We hold that the respondent had no duty to warn the public under the facts of this case.

Affirmed.

_____
Justice

We concur:

_____
           Chief Justice

_____

_____

_____

_____

_____
              Justices