No. 04-391

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 297

_____

SVKV, L.L.C., d/b/a BEEHIVE HOMES OF HELENA,

        Plaintiff, Counterdefendant and Respondent,

    v.

TY HARDING, d/b/a HARDING ENTERPRISES,

        Defendant, Counterclaimant and Appellant.

_____

APPEAL FROM:    District Court of the First Judicial District,
                      In and for the County of Lewis and Clark, Cause No. ADV-2000-514,
                      The Honorable Dorothy McCarter, Presiding Judge.

COUNSEL OF RECORD:

        For Appellant:

                G. Patrick HagEstad; Milodragovich, Dale, Steinbrenner & Binney, P.C., Missoula, Montana

        For Respondent:

                Joe Seifert; Keller, Reynolds, Drake, Johnson & Gillespie, P.C., Helena, Montana

_____

Submitted on Briefs:  July 19, 2006

Decided:  November 20, 2006

Filed:

_____
                          Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Ty Harding, doing business as Harding Enterprises (Harding), appeals from the order of the First Judicial District Court, Lewis and Clark County, granting summary judgment to SVKV, L.L.C. (SVKV), doing business as Beehive Homes of Helena, on Harding's counterclaims, and from the court's later order denying Harding's request for a hearing on SVKV's motion.  We affirm.

¶2     The issues on appeal are:

¶3     1.  Did the District Court abuse its discretion by failing to hold a hearing or obtain the parties' express waiver of a hearing before granting SVKV summary judgment on Harding's counterclaims?

¶4     2.  Did the District Court err in granting summary judgment to SVKV?

¶5     3.  Is SVKV entitled to attorney's fees or costs on appeal?

## BACKGROUND

¶6     In October of 1996, Bee Hive Homes of Northern Montana, Inc. (Northern) entered into a contract, with Ken Vivrette and Damian Flaherty signing it in their capacity as Northern's officers.  The other party to the 1996 contract was Bee Hive Development, Inc.

¶7     According to a document of record, Bee Hive Homes Development, Inc., was the predecessor of both Bee Hive Homes of America, Inc., and Bee Hive Homes, Inc.  Another document states Bee Hive Homes of America, Inc., and Bee Hive Homes, Inc., had entered into an agreement pursuant to which the sub-franchisor, Bee Hive Homes, Inc., could in turn sub-franchise to others, upon written consent from Bee Hive Homes of America, Inc.  The relationship of these three entities is not at issue in this appeal.

2

Therefore, we refer to all of them as Bee Hive.

¶8 The 1996 contract generally stated that Bee Hive would provide certain plans, specifications, operations and procedural manuals for residential care facilities (homes) in exchange for Northern's payments of certain sums. One paragraph of the contract stated that, as consideration for Bee Hive's providing certain consulting services—including assistance in construction-related matters, accounting and payroll procedures, training, and menus—Northern would pay specified percentages of its homes' gross rents.

¶9 In late 1996, apparently before or around the same time as the 1996 contract involving Northern was executed, Tricia and Damian Flaherty and Sue and Ken Vivrette formed TDSK, L.L.C. (TDSK) to build and operate homes. It is not clear what, if any, relationship existed between TDSK and Northern. Later—perhaps in March of 1999, according to Sue Vivrette's deposition testimony—the Vivrettes bought out the Flahertys and formed SVKV. The Vivrettes were involved, via one entity or another, in the construction, development and operation of three homes in Lewis and Clark County.

¶10 In June of 1998, Bee Hive sent a letter to the Vivrettes, addressed to them at Bee Hive Homes of Helena, in which Bee Hive advised it was "restructuring its operations to conform to all national and federal franchise law" and recommended the execution of a franchise agreement with Bee Hive. The letter also set forth two other options: a repurchase offer and an "option to reject the repurchase offer . . . . This means that you will agree to continue under the existing agreement and that you do not elect to sign a new franchise agreement." The letter stated that acceptance of either of the last two options would constitute a release of Bee Hive from any claims and liabilities regarding the offer and sale of homes. Neither the Vivrettes nor any entity involving the Vivrettes

3

responded to the letter.

¶11    Later, in October of 1998, Bee Hive executed a "sub-franchise agreement" with Harding, which stated that Bee Hive granted Harding "the exclusive right to build, own, and operate Bee Hive Homes (under the franchise agreement . . . ) and to sell franchises on [Bee Hive's] behalf of Homes using the System under the Names and Marks" within Montana.    Under the 1998 agreement, Harding agreed to pay a franchise fee in the amount of 50% of the franchise fees payable under "the Franchise Agreement for each franchise" after the first eight acquired and owned by Harding, as well as "each franchise sold" by Harding in Montana.    In addition, the 1998 agreement stated that Harding agreed to pay 50% of franchise royalties on the franchises acquired and owned by Harding in Montana and "each franchise sold" in Montana.    After the 1998 agreement was executed by Bee Hive and Harding, SVKV paid Harding certain amounts for a period of time, but later reduced—and ultimately stopped—its payments.

¶12    In August of 2000, SVKV filed a complaint against Ty Harding, doing business as Harding Enterprises, asserting he had demanded money under the 1996 agreement and had threatened to sue SVKV to collect.    Among other things, SVKV requested a declaratory judgment that the 1996 contract was void, asserted breach of the 1996 contract, and requested damages and restitution.    At different points during the underlying action, the District Court dismissed each of SVKV's claims.

¶13    Harding answered and counterclaimed, affirmatively alleging that he and Harding Enterprises were actually Harding Enterprises, Inc., and asserting breach of contract, fraud, and unjust enrichment.  SVKV responded to the counterclaims.

¶14    The District Court held a scheduling conference in June of 2002, which counsel

4

for both parties attended telephonically, and later entered a scheduling order stating

> [w]hen any motion has been fully briefed, oral argument if requested by any party has been held and the motion is submitted for decision, **one of the parties must so advise the Court by filing and serving a "Notice of Submittal."  Until such notice has been filed and served, the motion will not be deemed submitted for decision.  Hearing on a motion for summary judgment is deemed waived unless a written request for hearing is submitted within the time period for filing the briefs on the motion.**

In September of 2003, after the parties stipulated to continue the trial date, the court entered another scheduling order containing the same language.

¶15   In October of 2003, SVKV moved for summary judgment on Harding's counterclaims, and Harding responded.  On the same day it filed its reply brief in November of 2003, SVKV filed and served a "Notice of Submittal" stating that "[p]ursuant to local rule, the undersigned hereby advised [sic] the Court that briefing on the Plaintiff's motion for summary judgment . . . has been completed, neither party has requested oral argument, and the matters may be deemed submitted and ready for decision."  Harding did not dispute or respond to the Notice.

¶16   In January of 2004, the District Court granted SVKV's motion for summary judgment on Harding's counterclaims, determining there was no evidence of contractual privity between Harding and SVKV.  Approximately four days later, Harding requested a hearing on SVKV's motion for summary judgment—asserting, among other things, that "it would . . . be an abuse of discretion should the Court deny [Harding] a hearing on the matter 'unless' [Harding] 'specifically' waived its right to a hearing."

¶17   The District Court denied the request for a hearing.  It referred Harding to the June 24, 2002 and September 26, 2003 scheduling orders that directed the parties, in bold

5

print, to request a hearing by the end of briefing on a motion or the hearing would be deemed waived. Noting it had ruled two months after briefing was completed and neither party had requested a hearing, the court stated Harding "apparently expects the Court to sit on pending summary judgment motions indefinitely until a party decides it wants a hearing."

¶18 Harding appeals. We set forth additional facts in the discussion below.

## STANDARDS OF REVIEW

¶19 We review a district court's decision to deny a hearing on a summary judgment motion for an abuse of discretion. *Virginia City v. Olsen*, 2002 MT 176, ¶ 13, 310 Mont. 527, ¶ 13, 52 P.3d 383, ¶ 13 (citation omitted). A court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *Pumphrey v. Empire Lath and Plaster*, 2006 MT 99, ¶ 16, 332 Mont. 116, ¶ 16, 135 P.3d 797, ¶ 16 (citation omitted).

¶20 We review a district court's grant of summary judgment *de novo*, determining whether—viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor—genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), M.R.Civ.P.; *Prindel v. Ravalli County*, 2006 MT 62, ¶ 19, 331 Mont. 338, ¶ 19, 133 P.3d 165, ¶ 19 (citations omitted).

## DISCUSSION

¶21 Before addressing the issues before us on appeal, we note the parties' briefs variously refer to the appellant as Mr. Harding, Harding Enterprises, and Harding Enterprises, Inc. In this regard, we observe the 1998 agreement names Harding

6

Enterprises, Inc. as "Sub-Franchisor" and is signed, in pertinent part, "Sub-Franchisor: By Ty Harding, Its Owner"—an unusual designation for a person signing on a corporation's behalf. Although Harding alleged a corporate status via its answer and counterclaims, Harding has never moved to amend the caption under which SVKV filed its complaint, which is the caption set forth above. However, both parties and the District Court have used a caption—never formally adopted—naming Ty Harding, doing business as Harding Enterprises as the defendant and, below a line, naming Harding Enterprises, Inc., as the counterclaimant against SVKV as counterdefendant. Indeed, the District Court's orders at issue in this appeal have different captions. Moreover, Harding's notice of appeal states "Defendant above named"—referring to Ty Harding, doing business as Harding Enterprises—"appeals . . . in this case." SVKV has not questioned the propriety of Harding Enterprises, Inc.'s counterclaims where it has not been named as a defendant. Nor has either party asked the District Court or this Court to resolve the apparent confusion.

¶22 Absent any request by the parties to determine the counterclaimant's or appellant's identity, we decline to make such a determination. We use the original caption in this case because that caption was never properly amended. Further, without resolving the actual identity of the appellant, we refer to the appellant as "Harding" and "it" and we refer to Ty Harding as an individual only in association with his deposition testimony.

¶23 **1. Did the District Court abuse its discretion by failing to hold a hearing or obtain the parties' express waiver of a hearing before granting SVKV summary judgment on Harding's counterclaims?**

¶24 Harding asserts it was "caught off guard" by the District Court's order granting SVKV summary judgment because it expected that, before granting summary judgment,

7

the court would schedule a hearing or obtain the parties' express waiver of the hearing. Harding does not dispute that the scheduling orders state without equivocation that the District Court would determine a party waived the right to a hearing on a summary judgment motion if the party did not request a hearing before the close of briefing. Nor does Harding dispute that it failed to respond when SVKV filed and served its Notice that neither party had requested a hearing before the end of briefing and the matter was submitted for decision.

¶25 Harding argues that—despite the scheduling orders and its failure to respond to SVKV's Notice—this Court's prior cases require a court to schedule a hearing or obtain express waivers from the parties before granting summary judgment. On this basis, Harding contends the District Court abused its discretion by granting summary judgment without a hearing and denying Harding's post-judgment motion for a hearing. As the following somewhat detailed discussion bears out, we conclude *Cole v. Flathead County*, 236 Mont. 412, 771 P.2d 97 (1989)—one case advanced by Harding—controls here.

¶26 In *Cole*, the district court granted the defendants' summary judgment motion, without a hearing, on grounds that the plaintiffs had not filed a response brief within ten days, the time limit set forth in Rule 2(a) of the Montana Uniform District Court Rules (MUDCR). *Cole*, 236 Mont. at 414, 771 P.2d at 98. In doing so, the district court apparently relied on Rule 2(b), MUDCR, which states, in part, that "[f]ailure to file briefs may subject the motion to summary ruling . . . . Failure to file an answer brief by the adverse party within ten days shall be deemed an admission that the motion is well taken." *Cole*, 236 Mont. at 415, 771 P.2d at 99. On appeal, the issues were whether the time limit for filing a response brief in Rule 2, MUDCR, applied to summary judgment

8

motions, whether a party is entitled to rely upon the setting of a hearing or oral argument on a motion for summary judgment, and whether any conflict existed among the MUDCR, the Montana Rules of Civil Procedure and the district court's Policies and Procedures. *Cole*, 236 Mont. at 413-14, 771 P.2d at 98.

¶27 Addressing the first issue, we noted Rule 56(c), M.R.Civ.P., allows a party to serve affidavits opposing a summary judgment motion "prior to the day of hearing," and a court may consider oral testimony at a summary judgment hearing. *Cole*, 236 Mont. at 415-16, 771 P.2d at 99. Accordingly, we determined the time limit for briefing set forth in Rule 2(a), MUDCR, conflicted with Rule 56(c), M.R.Civ.P., which authorizes a court to grant summary judgment only if, among other things, no genuine issues of material fact exist—an "inquiry [that] does not admit of decision merely on a technical point, such as whether briefs have been filed on time." Pursuant to Rule 2(e), MUDCR—which provides that in the event of a conflict, the Montana Rules of Civil Procedure control— we concluded that the 10-day time limit contained in Rule 2(a), MUDCR, did not apply to summary judgment motions. *Cole*, 236 Mont. at 416-17, 771 P.2d at 100.

¶28 We next addressed the remaining issues, both of which we characterized as related to the question of the necessity of a hearing in connection with a summary judgment motion. *Cole*, 236 Mont. at 417, 771 P.2d at 100. Noting that either party "could have applied to the [d]istrict [c]ourt for a hearing," we opined that the parties "may have been deterred" in that respect by a provision in the district court's Policies and Procedures. *Cole*, 236 Mont. at 417-18, 771 P.2d at 100. The Policies and Procedures provision stated that the district court's "'practice will be to discourage'" oral arguments and that the court would require "'full-fledged compliance'" with Rules 2(c) and (d), MUDCR—

by which the court meant a request for oral argument "'must be couched in specific terms, to show me that briefs alone are insufficient to advise me fully of your client's contentions and all relevant points of law.'" *Cole*, 236 Mont. at 418, 771 P.2d at 101. In this regard, we note Rules 2(c) and (d), MUDCR, unchanged since that time, read as follows:

> (c) Oral argument. The court may order oral argument sua sponte or upon application of a party.
> (d) When motion deemed submitted. Unless oral argument is ordered or unless the time is enlarged by the court, the motion is deemed submitted at the expiration of any of the applicable time limits set forth above without supporting briefs having been filed.
>
>> If oral argument is ordered, the motion will be deemed submitted at the close of argument unless the court orders additional briefs, in which case the motion will be deemed submitted as of the date designated as the time for filing the final brief.

¶29 On appeal in *Cole*, we quoted *Dredge Corp. v. Penny*, 338 F.2d 456, 461-62 (9th Cir. 1964)—a case involving a local rule that effectively precluded an adverse party from requesting a hearing by requiring that such a request be attached to the underlying motion—for its statement that

> Rule[s] 56(c), 78 and 83, read together, authorize district courts to provide by a rule that a party desiring oral argument on a motion for summary judgment must apply therefore, in the absence of which oral argument will be deemed to have been waived. Such a local rule was involved, and upheld, in *Bagby v. United States* [(8th Cir. 1952), 199 F.2d 233].

*Cole*, 236 Mont. at 418, 771 P.2d at 101. We also determined that:

> [i]n view of the language of Rule 56(c), and having in mind that the granting of such a motion disposes of the action on the merits, with prejudice, a district court *may not*, by rule or otherwise, *preclude* a party *from requesting oral argument*, nor deny such a request when made by a party opposing the motion unless the motion for summary judgment is denied.

*Cole*, 236 Mont. at 418, 771 P.2d at 101. (Emphasis added).

10

¶30 Subsequently, the Court stated "[w]e hold, therefore, that unless the right to a hearing on a Rule 56 motion is specifically waived by all parties (and not waived simply by the failure to file briefs) either the movant or the adverse parties are entitled to a hearing under Rule 56 in the ordinary case." The Court acknowledged that a trial court might dispense with a hearing if the moving party were "clearly entitled" to judgment as a matter of law, but determined that situation was not present there. Finally, the Court observed the district court's "findings of fact and conclusions of law" did not include a determination that no genuine issue of material fact existed and, therefore, did not specify the grounds for granting the motion with sufficient particularity as to apprise the parties and appellate court of its rationale, as required by Rule 52(a), M.R.Civ.P. Consequently, the Court reversed the order granting summary judgment and remanded. *Cole*, 236 Mont. at 419, 771 P.2d at 101-02.

¶31 In *Cole*, we distinguished the acceptable trial court practice of requiring parties to request an oral argument or hearing from a rule deterring or precluding a party from making such a request—such as the Policies and Procedures provision in *Cole* and the "attachment" requirement in *Dredge Corp.* Our acknowledgment in *Cole* that either party could have applied for a hearing, although the parties in that case might have been deterred by the district court's Policies and Procedures, was entirely consistent with this distinction. *See Cole*, 236 Mont. at 417-18, 771 P.2d at 100. Thus, in *Cole*, we expressly approved requirements for parties to request summary judgment hearings, so long as courts do not preclude or deter such requests.

¶32 Regarding our statement in *Cole* that a party must have "specifically waived" the right to a hearing on a summary judgment motion, that statement also includes the

11

parenthetical phrase "and not waived simply by the failure to file briefs." *Cole*, 236 Mont. at 419, 771 P.2d at 101. This parenthetical phrase—which has not been carried forward in the post-*Cole* cases mentioned below that refer to "specific" or "explicit" waiver—establishes that, in *Cole*, we rejected any notion that a party could waive the right to a hearing by merely failing to file a brief. We did not address in *Cole* whether "specific" or "explicit" waiver could occur if a party failed to request a hearing in the face of a requirement for such a request; however, that interpretation is supported by *Cole*'s favorable citation of *Dredge Corp.* At the very least, the language in *Cole* regarding "specific" waiver, as opposed to waiver by failing to file a response brief, in no way contradicts the earlier—almost immediately preceding—statement that a trial court may require a party to apply for a summary judgment hearing and, absent such a request, deem the right to a hearing waived.

¶33 Here, the District Court's scheduling orders provided that a party could request oral argument or hearing at any time during briefing on the motion. As discussed above, that requirement is entirely consistent with—and expressly authorized by—*Cole*. Harding has advanced nothing of record suggesting that the District Court precluded or deterred it from requesting a hearing; indeed, the scheduling orders state in bold print that parties could submit a written request during briefing. Thus, the District Court's grant of summary judgment without a hearing is consistent with *Cole*.

¶34 Harding also relies on post-*Cole* cases in support of its position that a hearing was required in this case. It advances *Aetna Life Ins. Co. v. Jordan*, 254 Mont. 208, 211, 835 P.2d 770, 772 (1992), for the proposition that a district court may not preclude a party from requesting oral argument on a summary judgment motion or deny such a request by

the party opposing the motion unless the motion for summary judgment is denied. In addition, Harding relies on *Estate of Schwabe v. Custer's Inn*, 2000 MT 325, ¶ 55, 303 Mont. 15, ¶ 55, 15 P.3d 903, ¶ 55, regarding the statement that "[a]s a general rule, an oral argument is required for summary judgment unless it is specifically waived by all parties"—a statement we made before declining to address a party's assertion that it was entitled to a second summary judgment hearing because that assertion was raised for the first time on appeal. *See Estate of Schwabe*, ¶¶ 56-57. In this regard, we note that other cases include similar "specifically waived" or "explicitly waived" language. *See*, *e.g.*, *Virginia City*, ¶ 15; *Linn v. City County Health Dept.*, 1999 MT 235, ¶ 8, 296 Mont. 145, ¶ 8, 988 P.2d 302, ¶ 8. Harding also advances *Konitz v. Claver*, 1998 MT 27, ¶ 31, 287 Mont. 301, ¶ 31, 954 P.2d 1138, ¶ 31, in which we agreed with a contention that parties are entitled as a matter of right to a hearing on a motion for summary judgment.

¶35　As in *Cole*, these statements in post-*Cole* cases establish that a party is entitled to a summary judgment hearing and a court may not deter or preclude a party from requesting one. Nothing in our post-*Cole* cases has altered our statement in *Cole* that a court may require parties to request hearings on summary judgment motions. Nor have any of our post-*Cole* cases addressed the issue presented here: whether a party who fails to timely request a hearing on a summary judgment motion—despite a requirement for such a request—is nevertheless entitled to a hearing, especially after the trial court has ruled on the motion.

¶36　It is undisputed that Harding did not request a hearing or assert its right to a hearing until after the District Court entered summary judgment for SVKV—despite receiving ample notice, via the scheduling orders and SVKV's Notice, that the District

13

Court would deem the hearing waived and decide the motion without a hearing unless a party requested one. As noted above, Harding has advanced nothing to suggest the District Court precluded or deterred it from requesting a hearing on SVKV's summary judgment motion or otherwise interfered with its right to a hearing. Given these circumstances and our case law, Harding has not established that in granting summary judgment without a hearing, the District Court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice. *See Pumphrey*, ¶ 16.

¶37    We hold the District Court did not abuse its discretion by granting summary judgment to SVKV on Harding's counterclaims without first holding a hearing.

¶38    **2. Did the District Court err in granting summary judgment?**

¶39    Harding asserts entitlement to payments from SVKV based on certain provisions in the 1996 contract and 1998 agreement. Paragraph 3.3 of the 1996 contract states that Northern agreed to pay to Bee Hive

> [a]s consideration for the consulting services described in paragraph 2, six percent (6%) of the gross rents payable monthly, beginning sixty (60) days after issuance of the occupancy permit on the first five (5) Homes, four percent (4%) after the sixth Home occupancy permit is issued and ending ten (10) years after said date. After ten (10) years, Northern shall pay two percent (2%) of the gross rents in perpetuity.

Paragraph 2.1 of the 1998 agreement between Harding and Bee Hive reads as follows:

> Grant of Franchise. Subject to the terms and conditions contained in this Agreement, Franchisor [Bee Hive] hereby grants to Sub-Franchisor [Harding], and Sub-Franchisor hereby accepts, the exclusive right to build, own, and operate Bee Hive Homes (under the franchise agreement . . . ) and to sell franchises on Franchisor's behalf of Homes using the System under the Names and Marks within [Montana].

Paragraph 3.2 of the 1998 agreement states

> Franchise Fee. Sub-Franchisor hereby promises and agrees to pay to Franchisor a franchise fee (the "Franchise Fee") in the amount of Fifty Percent (50%) of: (I) the Franchise Fees payable under the Franchise Agreement for each franchise acquired and owned by Sub-Franchisor in the Area, provided that no Franchise Fees shall be paid on the first 8 franchises acquired and owned by the Sub-Franchisor in the Area and (ii) [sic] the Franchise fees payable under the Franchise agreement for each franchise sold by Sub-Franchisee [sic] in the Area, such Franchise Fees to be payable upon the execution and delivery of the Franchise Agreement.

Paragraph 3.3 of the 1998 agreement states

> Royalty. In addition to the Franchise Fee, Sub-Franchisor promises and agrees to pay to Franchisor a royalty (the "Royalty") in the amount of (I) Fifty Percent (50%) of the Franchise Royalties, including interest and penalties, payable by Sub-Franchisor on the first 8 (eight) franchises acquired and owned by the Sub-Franchisor in the Area; (ii) [sic] Fifty Percent (50%) of the Franchise Royalties, including interest and penalties, payable by Sub-Franchisor on the 9th and each additional franchise acquired and owned by the Sub-Franchisor in the Area and (iii) [sic] Fifty Percent (50%) of the Franchise Royalties, including interest and penalties, received by Sub-Franchisor from the Franchisee of each franchise sold in the Area. The Royalty is due and payable on or before the 15th day of the month following the calendar month for which the Franchise Royalties are required to be paid by the Franchisee and the Sub-Franchisor under their respective Franchise Agreements.

¶40 Harding contends that a genuine issue of material fact exists with respect to whether the parties to the 1998 agreement—Harding and Bee Hive—intended to assign Bee Hive's rights under the 1996 contract, including the right to collect money, to Harding. In this regard, Harding correctly notes that nothing in the 1996 contract prohibits assignments. SVKV responds that the 1998 agreement, by its terms, applies only to franchises, and Harding has not raised a genuine issue of material fact or a valid legal argument to refute SVKV's position that its homes were not franchises. In granting summary judgment to SVKV, the District Court reasoned that, "[w]hile there may be

15

contractual obligations between SVKV and [Bee Hive], there is simply no evidence of privity between Harding and SVKV." On that basis, the trial court determined no genuine issue of material fact existed, and SVKV was entitled to judgment as a matter of law.

¶41   Replying to SVKV's argument that the 1998 agreement does not apply to franchises, Harding asserts that if parties to a contract have given a contract term a special meaning, they should be able to advise a court of that special meaning. In this respect, Harding relies on *360 Ranch Corp. v. R & D Holding* (1996), 278 Mont. 487, 491-92, 926 P.2d 260, 262-63, in which we determined an affidavit—and, more importantly, the language of the agreement at issue—constituted evidence contradicting the district court's determination that no genuine issue of material fact existed regarding the contract parties' intent. Because *360 Ranch Corp.* did not address a special meaning attributed to a term by contract parties, that case does not support Harding's position.

¶42   Section 28-3-501, MCA, however, provides that

> [t]he words of a contract are to be understood in their ordinary and popular sense rather than according to their strict legal meaning unless used by the parties in a technical sense or unless a special meaning is given to them by usage, in which case the latter must be followed.

Although not entirely clear, it appears Harding's argument is that Bee Hive and Harding gave a special meaning to the term "franchises" in the 1998 agreement. In this regard, Bee Hive president Twayne Walker's affidavit speaks to his interpretation of the 1998 agreement as a whole, rather than to any special meaning of the term "franchises." More importantly, Ty Harding testified in his deposition that he did not regard the Vivrettes as franchise holders and that he viewed the 1996 contract between Bee Hive and Northern

16

as an operating agreement rather than a franchise agreement. Based on this testimony, we conclude Harding has failed to establish a genuine issue of material fact with respect to whether any special meaning ascribed by the 1998 agreement parties to the term "franchises" encompasses SVKV's homes.

¶43    Harding also asserts that the language of the 1998 agreement supports his position that Bee Hive assigned Harding its rights under the 1996 contract. The interpretation of a contract is a question of law. When the contract has been reduced to writing, the parties' intention is to be ascertained, if possible, from the writing alone; thus, if a contract's terms are clear and unambiguous, a court must apply the language as written. *Wurl v. Polson School Dist. No. 23*, 2006 MT 8, ¶ 16, 330 Mont. 282, ¶ 16, 127 P.3d 436, ¶ 16 (citations omitted). An ambiguity exists where the language of a contract, as a whole, is reasonably subject to two or more interpretations. When a contract term is ambiguous, interpretation of the term involves determining a question of fact regarding the parties' intent. The initial determination of whether an ambiguity exists, however, is a question of law for a court to determine. *Wurl*, ¶ 17 (citations omitted).

¶44    First, Harding contends that—because ¶ 2.1 specifically refers to homes using the Bee Hive system—a reasonable interpretation of the 1998 agreement is that it assigned Bee Hive's rights to collect fees from all homes in Montana, including SVKV's homes. We disagree. Paragraph 2.1 states that Bee Hive granted to Harding "the exclusive right to build, own, and operate Bee Hive Homes (under the franchise agreement . . . ) and to sell franchises on [Bee Hive's] behalf[.]" Given Ty Harding's testimony establishing the 1998 agreement parties' special meaning of the term "franchises" did not encompass SVKV's homes, discussed above, it is not reasonable to interpret ¶ 2.1 as applicable to

17

SVKV's homes. Thus, we conclude ¶ 2.1 does not create an ambiguity with respect to whether the 1998 agreement authorized Harding to collect fees from SVKV pursuant to the 1996 contract.

¶45 Next, Harding argues that, by explicitly requiring it to pay Bee Hive 50% of franchise fees and royalties, ¶¶ 3.2 and 3.3 of the 1998 agreement implicitly authorize Harding to collect 100% of the franchise fees and royalties. From that premise, Harding asserts "the only logical interpretation of the [1998 agreement] is that Bee Hive intended to assign all of its rights and obligations under the [1996] Contract to Harding, including the right to collect all fees[.]" Harding also advances § 28-3-201, MCA, which states "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect if it can be done without violating the intention of the parties."

¶46 Assuming *arguendo* that the 1998 agreement implicitly authorizes Harding to collect franchise fees and royalties in general, the issue here is whether Harding has the right to collect franchise fees and royalties *from SVKV*. By their terms, ¶¶ 3.2 and 3.3 apply only to "franchises" and, as addressed above, Ty Harding's testimony establishes that the special meaning ascribed by the 1998 agreement parties to the term "franchises" did not encompass SVKV's homes. In addition, we observe the record lacks any evidence—or, indeed, any argument—that the franchise fees and royalties mentioned in ¶¶ 3.2 and 3.3 of the 1998 agreement are related in any way to ¶ 3.3 of the 1996 contract, in which Northern agreed to pay Bee Hive percentages of its homes' gross rents for "consulting services." Thus, we conclude ¶¶ 3.2 and 3.3 do not create an ambiguity regarding whether the 1998 agreement authorizes Harding to collect payments from

18

SVKV pursuant to the 1996 contract. Having concluded that none of the paragraphs advanced by Harding creates an ambiguity, we further conclude that the 1998 agreement unambiguously does not apply to SVKV's homes and, thus, does not constitute an assignment of any of Bee Hive's rights under the 1996 contract to Harding.

¶47 Harding argues, however, that despite the inclusion of a merger clause in the 1998 agreement, extrinsic evidence—including Walker's affidavit and Ty Harding's deposition testimony—is admissible to demonstrate Bee Hive's intent to assign its rights under the 1996 contract. We reiterate that, in interpreting a contract, we first ascertain the parties' intent from the writing alone, and resort to extrinsic evidence only if the contract is ambiguous on its face. *Stockman Bank of Montana v. Potts*, 2002 MT 178, ¶ 21, 311 Mont. 12, ¶ 21, 52 P.3d 920, ¶ 21 (citation omitted). Here, we have concluded—as a matter of law—that the 1998 agreement unambiguously does not authorize Harding to collect from SVKV. Thus, no fact question regarding the 1998 agreement parties' intent exists, and extrinsic evidence is not admissible.

¶48 Finally, Harding asserts genuine issues of material fact remain regarding its fraud and unjust enrichment counterclaims. Harding concedes its fraud counterclaim is dependent on whether Bee Hive assigned its rights under the 1996 contract. Because we have determined the 1998 agreement did not apply to SVKV's homes and no assignment of Bee Hive's rights under the 1996 contract occurred, we need not further address Harding's fraud counterclaim.

¶49 Harding also contends, however, that its unjust enrichment counterclaim is not dependent on its contractual privity. Harding did not make this argument in the District Court, despite SVKV's clear assertion that Harding's fraud and unjust enrichment

19

counterclaims were both dependent on Harding's privity of contract. While this Court reviews orders granting summary judgment *de novo*, we also generally do not address issues raised for the first time on appeal. *See, e.g.*, *Andersen v. Monforton*, 2005 MT 310, ¶ 30, 329 Mont. 460, ¶ 30, 125 P.3d 614, ¶ 30 (citation omitted). Thus, we decline to address Harding's contention further.

¶50 We hold the District Court did not err in granting summary judgment to SVKV on Harding's counterclaims.

¶51 **3. Is SVKV entitled to attorney's fees or costs on appeal?**

¶52 SVKV requests attorney's fees and costs on appeal. First, noting Harding's counterclaims were based on the 1996 contract, SVKV relies on a provision of that contract stating that the prevailing party in an action to enforce a provision of the contract is entitled to costs and attorney's fees on appeal. SVKV advances no authority, however, for the proposition that we may require an unsuccessful litigant—as Harding is here on appeal—to pay costs or attorney's fees on appeal under a contract provision, after we have determined that litigant was not in privity to the contract. Rule 23(a)(4), M.R.App.P., requires an appellant to support arguments with citations to relevant authorities. *See In re Marriage of Markegard*, 2006 MT 111, ¶ 34, 332 Mont. 187, ¶ 34, 136 P.3d 532, ¶ 34 (citation omitted). Rule 23(b), M.R.App.P., requires the same of respondents. Absent authority, we decline to further address SVKV's request for costs and attorney's fees on appeal based on the contractual provision.

¶53 Regarding costs on appeal, SVKV also relies on § 25-10-104, MCA, which provides that, except in certain circumstances not applicable here in which this Court has discretion to award costs, "the successful party shall recover from the other party his

20

costs." Rule 33(a), M.R.App.P., states costs will be taxed as provided by § 25-10-104, MCA, and unless otherwise provided by the Court in its decision, costs will automatically be awarded to the successful party. Thus, under the circumstances in this case, the successful party need not request costs on appeal. Although Harding addresses SVKV's request for attorney's fees, Harding does not address SVKV's request for costs on appeal pursuant to § 25-10-104, MCA. We have determined the District Court did not abuse its discretion or err in granting summary judgment to SVKV on Harding's counterclaims without a hearing. Therefore, SVKV has successfully defended against Harding's appeal and is entitled to its costs on appeal pursuant to § 25-10-104, MCA.

¶54    Affirmed.

/S/ KARLA M. GRAY

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice James C. Nelson, concurring in part and dissenting in part.

¶55    I concur in the Court's resolution of Issues Two and Three. However, with respect to Issue One, while I agree with the Court's ultimate conclusion that Harding waived its right to a summary judgment hearing, I dissent from the analysis proffered by the Court in support of this conclusion.

¶56    In a series of cases beginning with *Cole v. Flathead County*, 236 Mont. 412, 771 P.2d 97 (1989), this Court established unequivocally that (1) in the ordinary case, both the movant and the adverse party are "entitled" to a hearing on a motion for summary judgment and, therefore, a district court may not "preclude" a party from requesting oral argument nor "deny" such a request when made (unless the motion itself is denied), and (2) this right to a hearing exists unless it is "specifically waived" by all parties. Given these mandates, the admonition set forth in the District Court's scheduling orders in the case at hand—namely, that a "[h]earing on a motion for summary judgment is *deemed* waived unless a written request for hearing is submitted within the time period for filing the briefs on the motion" (bold typeface omitted, emphasis added)—is of dubious propriety. Nevertheless, for the reasons set forth below, the court's admonition is reconcilable with *Cole* and its progeny, though such reconciliation requires further development of *Cole*'s waiver rule.

¶57    Rather than take on this task, the Court elects instead to completely rewrite *Cole* so that it "authorize[s]" the District Court's scheduling orders. As explained below, however, we never in *Cole*—or in any other case, for that matter—"expressly approved" or "expressly authorized" the trial court practice of requiring parties to an action to request a summary judgment hearing or risk waiver. This brand new holding has been

22

fabricated out of thin air by a majority of the Court today and grafted onto the *Cole* opinion.

¶58 In a similar vein, several of our post-*Cole* cases contain misstatements of *Cole*'s core holdings. Yet, rather than deal with these inaccuracies forthrightly, the Court glosses over them with one sentence. Worse still, the Court purports in that one sentence to equate the misstatements in our post-*Cole* cases with the actual holdings in *Cole*, as if they all "establish" the same proposition.

¶59 Unfortunately, the inevitable result of the Court's revisionist approach—as opposed to overruling or clarifying our precedents based on what they *actually* say—is a take-your-pick buffet of legal rules, which in turn creates confusion and unpredictability. It is therefore necessary to provide an independent discussion of Issue One—one which rests on the actual holdings of *Cole* and which also clarifies the cases containing inaccurate restatements of *Cole*'s holdings.

¶60 In *Cole*, we addressed two procedural rules relied on by the district court in granting Flathead County's motions for summary judgment under M. R. Civ. P. 56(c). First, Rule 2 of the Montana Uniform District Court Rules ("M. U. D. C. R.") provided that " '[f]ailure to file an answer brief by the adverse party within ten days shall be deemed *an admission that the motion is well taken*.' " *Cole*, 236 Mont. at 415, 771 P.2d at 99 (some emphasis omitted) (quoting M. U. D. C. R. 2(b)). Since the Coles had not filed a responsive brief to the County's motions within the ten days prescribed by Rule 2(b), the district court deemed this an admission that the motions were well taken and, accordingly, granted the motions.

¶61 On appeal, we observed that by relying on Rule 2(b), the district court had decided the County's motions "on a technical point," which was contrary to the purpose of a motion under Rule 56—namely, "to dispose promptly of actions in which there is no genuine issue of fact." *Cole*, 236 Mont. at 415, 416, 771 P.2d at 99, 100. Thus, because "the essential question for the District Court in deciding a motion for summary judgment either for the plaintiff or for the defendant is whether there exists a genuine issue of material fact," *Cole*, 236 Mont. at 416, 771 P.2d at 100, we held that the portion of Rule 2 which deemed a party's failure to file an answer brief within ten days as "an admission that the motion is well taken" did *not* apply to motions for summary judgment, *Cole*, 236 Mont. at 417, 771 P.2d at 100.

¶62 The second rule we addressed in *Cole* was a local rule adopted by the district court which stated that

> unless I am satisfied that oral argument would be beneficial (in which case I may call for it, *sua sponte*), my practice will be to discourage this occasionally wasteful use of the Court's (and your) time, and to require full-fledged compliance with Rule 2(c) and (d), Uniform Rules. By "full-fledged," I mean your application for leave to present oral argument must be couched in specific terms, to show me that briefs alone are insufficient to advise me fully of your client's contentions and all relevant points of law.

*Cole*, 236 Mont. at 418, 771 P.2d at 101 (some internal quotation marks omitted).

¶63 Relying on this rule, the district court had denied the Coles' post-judgment motion to set aside the order granting summary judgment and their concomitant request for oral argument. We determined that this was error, reasoning as follows:

> [U]nder Rule 56(c), a hearing is contemplated from which the district court will consider not so much legal arguments, but rather whether there exists genuine issues of material fact. Moreover, it is permissible under Rule 56

24

> for the District Court to receive affidavits on the day of the hearing and to take oral evidence, as has been indicated above.

*Cole*, 236 Mont. at 418, 771 P.2d at 101.

¶64 Accordingly, based on the language of Rule 56(c) and the fact that the granting of a motion for summary judgment disposes of the action on the merits *with prejudice*, we held that a district court may not, by rule or otherwise, "*preclude* a party from requesting oral argument, nor *deny* such a request when made by a party opposing the motion unless the motion for summary judgment is denied." *Cole*, 236 Mont. at 418, 771 P.2d at 101 (emphases added). In addition, we further held that "unless the right to a hearing on a Rule 56 motion is *specifically waived* by all parties (and not waived simply by the failure to file briefs) either the movant or the adverse parties are entitled to a hearing under Rule 56 in the ordinary case." *Cole*, 236 Mont. at 419, 771 P.2d at 101 (emphasis added). Finally, we made allowance for the unusual case by noting that "[t]here may be an occasion when under the law and the facts adduced, the movant would be so *clearly entitled* as a matter of law to a summary judgment that a district court might by order dispense with the necessity of a hearing." *Cole*, 236 Mont. at 419, 771 P.2d at 101 (emphasis added).

¶65 Thus, we specifically established in *Cole* that a hearing on a Rule 56 motion is a matter of right and that inaction by itself (such as failing to file a responsive brief, as was the case in *Cole*) does not constitute a waiver of this right. A review of our subsequent precedents reveals that we have remained faithful to these holdings in a variety of contexts.

¶66    First, in *Aetna Life Ins. Co. v. Jordan*, 254 Mont. 208, 210-12, 835 P.2d 770, 772-73 (1992), we confirmed the holdings of *Cole* but then determined that the district court had properly reinstated its order granting summary judgment to Aetna because the Jordans had "admitted" in their brief in support of their post-judgment motions that there were "no fact questions" precluding summary judgment. Then, in *Konitz v. Claver*, 1998 MT 27, 287 Mont. 301, 954 P.2d 1138, we agreed with Claver that, pursuant to Rule 56 and our holding in *Cole*, "the parties are entitled as a matter of right to a hearing on a motion for summary judgment," but we did not agree that the party opposing the motion is "entitled to testify without prior notice" at that hearing. *Konitz*, ¶ 31. Rather, we concluded that a district court's decision whether to allow the party opposing the motion to testify is "a discretionary ruling." *Konitz*, ¶ 32.

¶67    Next, in *Linn v. City County Health Dept.*, 1999 MT 235, 296 Mont. 145, 988 P.2d 302, we first stated that "[i]n the ordinary case, the parties have a right to a summary judgment hearing unless the hearing is explicitly waived." *Linn*, ¶ 8. We then noted our allowance in *Cole* for "the unusual case"—i.e., when under the law and the facts adduced, the movant is so " 'clearly entitled' " as a matter of law to a summary judgment that a district court might, by order, dispense with the necessity of a hearing. *Linn*, ¶ 8 (quoting *Cole*, 236 Mont. at 419, 771 P.2d at 101). Examining the facts before us to determine whether this exception applied, we concluded that the City County Health Department "was not so clearly entitled to judgment as a matter of law as to make this case the exception to the general rule that a party is entitled to a hearing before having her claim dismissed by summary judgment." *Linn*, ¶ 10. We therefore reversed the district court's grant of summary judgment in the absence of a hearing.

26

¶68 In *Estate of Schwabe v. Custer's Inn*, 2000 MT 325, 303 Mont. 15, 15 P.3d 903, we were presented with the question of whether parties are entitled to a *second* summary judgment hearing. The district court had held a hearing on the parties' cross motions for summary judgment and thereafter had issued an order denying both motions. *Schwabe*, ¶ 52. However, four months later, after "new evidence or new materials" had arisen, the district court revisited its ruling and entered summary judgment in favor of Custer's Inn. *Schwabe*, ¶¶ 52-53.

¶69 Reviewing the district court's actions, we reaffirmed that

> [a]s a general rule, an oral argument is required for summary judgment unless it is specifically waived by all parties. *See Cole v. Flathead County* (1989), 236 Mont. 412, 418-19, 771 P.2d 97, 101; *Linn v. City County Health Dept.*, 1999 MT 235, ¶ 8, 296 Mont. 145, ¶ 8, 988 P.2d 302, ¶ 8. This Court has stated that a district court may not, by rule or otherwise, preclude a party from requesting oral argument, nor deny such a request when made by a party opposing the motion. *See Aetna Life Ins. Co. v. Jordan* (1992), 254 Mont. 208, 211, 835 P.2d 770, 772 (quoting *Cole*, 236 Mont. at 418, 771 P.2d at 101).

*Schwabe*, ¶ 55. However, a summary judgment hearing had, in fact, been held on Custer's Inn's motion. Thus, the issue was whether the district court was required to afford the Estate a *second* summary judgment hearing when the court revisited its order denying that motion. We declined to answer this question, since the Estate had neither objected to the district court's entry of judgment without a second hearing (or adequate notice thereof) nor requested such a hearing. *Schwabe*, ¶¶ 56-57. We therefore concluded that the district court did not abuse its discretion when it entered summary judgment in favor of Custer's Inn. *Schwabe*, ¶ 58.

¶70 Lastly, in *Virginia City v. Olsen*, 2002 MT 176, 310 Mont. 527, 52 P.3d 383, our most recent decision applying *Cole*, we were presented again with the "clearly entitled"

exception previously discussed in *Linn*. After stating the general principle that "in the ordinary case the parties have a right to a summary judgment hearing unless the hearing is explicitly waived," *Virginia City*, ¶ 15 (citing *Linn*, ¶ 8), we reiterated that " '[t]here may be an occasion when under the law and the facts adduced, the movant would be so clearly entitled as a matter of law to a summary judgment that a district court might by order dispense with the necessity of a hearing,' " *Virginia City*, ¶ 16 (alteration in original) (quoting *Cole*, 236 Mont. at 419, 771 P.2d at 101).

¶71 We could not, however, ascertain whether this exception applied on the facts of the case, since the district court had neither entered an order dispensing with the necessity of a hearing nor specified "with sufficient particularity," as required by M. R. Civ. P. 52(a), the grounds underlying its grant of summary judgment to Virginia City. *Virginia City*, ¶¶ 16-20. Furthermore, the only hearing afforded the parties had taken place before discovery was conducted or responsive pleadings were filed. Consequently, we saw "no reason in this case to depart from the general rule that a party opposing a summary judgment motion is entitled to a hearing in order to establish genuine issues of material fact pursuant to Rule 56(c), M.R.Civ.P.," *Virginia City*, ¶ 23, and we concluded, accordingly, that Olsen and his co-defendant, Mason, were "entitled to a further evidentiary hearing prior to entry of a determination of the merits in this case," *Virginia City*, ¶ 24.

¶72 Thus, to summarize, our cases establish that both the movant and the adverse party are "entitled" to a hearing on a motion for summary judgment, unless that right is "specifically waived" by all parties, unless the motion is denied, or unless the movant is so "clearly entitled" to summary judgment under the law and the facts adduced that the

28

court might, by order, dispense with the necessity of a hearing. In addition, the court must specify with sufficient particularity (pursuant to M. R. Civ. P. 52(a)) the grounds underlying its ruling.

¶73 Before applying these principles to the case at hand, it is necessary to do what the Court has not: address our slight—but nevertheless significant—misstatements of *Cole*'s waiver rule in *Linn* and *Virginia City*. First, we stated in *Linn* that "[i]n the ordinary case, the parties have a right to a summary judgment hearing unless *the hearing* is *explicitly* waived." *Linn*, ¶ 8 (emphases added). Similarly, in *Virginia City* we again stated that "in the ordinary case the parties have a right to a summary judgment hearing unless *the hearing* is *explicitly* waived." *Virginia City*, ¶ 15 (emphases added) (citing *Linn*, ¶ 8). Yet, our original statement of the waiver rule in *Cole* was that "unless *the right* to a hearing on a Rule 56 motion is *specifically* waived by all parties (and not waived simply by the failure to file briefs) either the movant or the adverse parties are entitled to a hearing under Rule 56 in the ordinary case." *Cole*, 236 Mont. at 419, 771 P.2d at 101 (emphases added). In other words, under *Cole*, it is the *right*, not the hearing, which must be waived. Furthermore, and of particular significance in the case at hand, the right must be waived *specifically*, not necessarily explicitly.

¶74 The significance of this latter distinction is in the fact that an "explicit" waiver rule may be interpreted as requiring a narrower or heightened standard. In point of fact, "specific" and "explicit," while close in meaning, are not identical in meaning. "Specific" has been defined as "clearly distinguished, stated or understood," *The New Lexicon Webster's Encyclopedic Dictionary of the English Language* 954 (deluxe ed., Lexicon Publications 1992), while "explicit" has been defined as "clearly and openly

29

stated or defined, not left to be understood," *Webster's Encyclopedic Dictionary* 333; *see also Merriam Webster's Collegiate Dictionary* 409 (10th ed., Merriam-Webster 1997) ("EXPLICIT implies such verbal plainness and distinctness that there is no need for inference and no room for difficulty in  understanding.").  Certainly, something which is "left to be understood" may nevertheless become "clearly . . . understood."  Restated, something may be "clearly . . . understood," though it was not "openly stated."  Indeed, "implicit" has been defined as "understood though not stated."  *Webster's Encyclopedic Dictionary* 486.  Thus, a specific waiver is not *necessarily* made explicitly (though explicit waivers unquestionably are the norm).  Rather, there may be narrowly-defined circumstances in which the party's waiver is "clearly . . . understood," though it was not "openly stated" (the case at hand being one example, as discussed below).  Perhaps, then, the most pertinent definition of "specific" in this context is "free from ambiguity." *Merriam Webster's Collegiate Dictionary* 1128.[1]

¶75    Given both the distinction between "specific" and "explicit" and the fact that our use of the latter term in *Linn* and *Virginia City* was in the context of reciting established law, as opposed to engaging in a reasoned narrowing of *Cole*'s waiver rule, it would be

---

[1] Lest the foregoing distinction between "specific" and "explicit" be perceived as splitting hairs or a "battle of the dictionaries"—indeed, some dictionaries list "explicit" as one definition of "specific," *see*, *e.g.*, *Black's Law Dictionary* 1434 (Bryan A. Garner ed., 8th ed., West 2004); *Webster's New World College Dictionary* 1376 (Michael Agnes ed., 4th ed., Wiley Publishing 2002)—the point to be made here is this:  We should not leave these two terms open to as many interpretations as there are dictionaries and district court judges in this state.  Otherwise, one district court could proceed under a dictionary definition which equates "specifically" with "explicitly" (in which case a waiver that is not clearly and openly stated would be insufficient), while another could adopt a definition under which "specific" encompasses both "explicit" and "implicit" (in which case a waiver that is understood though not stated would be sufficient in certain situations), thus leading to inconsistent results based on nothing more than happenstance.

inappropriate not to abide by our original "specifically waived" language. The "explicitly waived" rule in *Linn* and *Virginia City*, therefore, should be overruled. It should not be characterized as merely the equivalent of "specifically waived," as the Court does today (*see* ¶¶ 34-35). (In this regard, I note that the Court provides no reasoning or authority whatsoever for the proposition that "specifically" and "explicitly" mean or "establish" the same thing under our *Cole* jurisprudence.)

¶76 Turning now to the case at hand, it is undisputed that the District Court granted SVKV's motion for summary judgment without holding a hearing on the motion. It also is undisputed that the District Court's decision to dispense with a hearing was not based on or supported by a determination that SVKV was "clearly entitled," under the law and facts adduced, to summary judgment. Rather, as explained in the court's order denying Harding's post-judgment motion to reconsider and request for hearing, the court relied on its two scheduling orders (one issued June 24, 2002, and the other September 26, 2003), both of which stated as follows: "Hearing on a motion for summary judgment is deemed waived unless a written request for hearing is submitted within the time period for filing the briefs on the motion" (bold typeface omitted). Because "[t]he Court received no request for hearing from either party" during this time frame, it "deemed" the hearing "waived."

¶77 Thus, the crux of the issue before us is whether Harding "specifically waived" its right to a summary judgment hearing by failing to submit a written request for a hearing within the time period for filing the briefs on SVKV's motion, as mandated by the District Court's scheduling orders. In other words, does Harding's inaction in the face of the court's orders constitute a specific waiver?

31

¶78    It cannot be disputed that under the specific language of *Cole*, inaction *alone* does not constitute a waiver of the right to a hearing on a Rule 56 motion.  Indeed, we stated that this right must be "specifically waived" by all parties, and we identified the mere "failure to file briefs" as a contrasting example of what does *not* constitute a specific waiver (which was apropos, given that the grant of summary judgment in *Cole* was based on the Coles' failure to file a responsive brief within the time period provided by M. U. D. C. R. 2).  *Cole*, 236 Mont. at 414, 419, 771 P.2d at 98, 101.  As the Court observes at ¶ 32, however, we did not address in *Cole* the question of whether inaction constitutes a specific waiver where a party fails to request a hearing *in the face of a requirement that it do so*.  For the reasons which follow, I conclude that it does.

¶79    The importance of hearings on motions for summary judgment cannot be overstated.  Such hearings provide the parties with an opportunity to speak directly to and interact with the judge and to answer any questions which have arisen upon the judge's review of the briefs.  They also enable the parties to present more nuanced versions of their arguments whereas briefs, by contrast, provide comparatively sterile presentations of the parties' respective positions.  In addition, because the granting of a motion for summary judgment "disposes of the action on the merits, *with prejudice*," *Cole*, 236 Mont. at 418, 771 P.2d at 101 (emphasis added), a summary judgment hearing is the non-movant's last chance to speak in defense of its case.  Thus, as we noted in *Cole*, it is permissible under Rule 56 for the district court to receive additional evidence, such as affidavits and oral evidence, on the day of the hearing.  *Cole*, 236 Mont. at 418, 771 P.2d at 101.  It is for these reasons that summary judgment hearings, as opposed to most other hearings, are a matter of right.

¶80    At the same time, however, our holding in *Cole* that parties have a "right" to a summary judgment hearing unless it is "specifically waived" was not intended as a tool by which a party could preclude a court from ever rendering a decision on a motion for summary judgment or get a second bite at the apple (by forcing the court, post-judgment, to revisit an adverse summary judgment ruling).  Thus, if a district court were to inquire of a party directly whether it will be requesting a summary judgment hearing, *Cole* does not sanction the party's postponing its response indefinitely under the assumption that the court will interpret such silence as a "yes" or in the hopes of obtaining some tactical advantage.  Rather, in such circumstances, the party's failure to respond in a timely manner to the court's inquiry *must* constitute a specific waiver of its right to a hearing.

¶81    This principle mandates the same conclusion with respect to the District Court's scheduling orders.  The court informed the parties that a hearing on a motion for summary judgment is "deemed waived" unless "a written request for hearing is submitted within the time period for filing the briefs on the motion."  Instructing a party in this manner that it must request a hearing within a reasonable time frame is not materially distinguishable—at least not for purposes of honoring the party's entitlement to a hearing—from making a specific inquiry of the party as to whether it would like a hearing.  Failure to respond in either situation constitutes a specific waiver.

¶82    Harding cites *Schwabe*, ¶ 55, for the proposition that if a district court does not obtain "express" waivers from both parties, it must schedule a summary judgment hearing.  Based on this premise, Harding informs us that it was "caught off guard" by the District Court's ruling on SVKV's motion without first holding a hearing.  Harding further explains that it "simply expected, in accordance with Rule 56(c) and this Court's

33

prior rulings, that *as a matter of course* the hearing would be scheduled" (emphasis added).

¶83    But for the District Court's scheduling orders, Harding's assumption would have been reasonable. As it is, however, Harding's being "caught off guard" could only be due to its failure to read those orders in their entirety. More importantly, our case law does not support Harding's position.

¶84    To be sure, we stated in *Schwabe* that, "[a]s a general rule, an oral argument is *required* for summary judgment *unless* it is specifically waived by all parties." *Schwabe*, ¶ 55 (emphases added) (citing *Cole*, 236 Mont. at 418-19, 771 P.2d at 101; *Linn*, ¶ 8). This was not to say, however, that an oral argument must be *scheduled* unless it is specifically waived. But, to the extent that the foregoing statement in *Schwabe* could be read in this manner, it does not constitute an intentional modification of our holdings in *Cole*. Rather, it is an imprecise summation of those holdings, in the same sense that our restatements of *Cole*'s waiver rule in *Linn* and *Virginia City* ("explicitly waived" in place of "specifically waived") were inaccurate recitations of established law.

¶85    Again, we held in *Cole* that the parties are "entitled" to a hearing under Rule 56 in the ordinary case and that a district court, therefore, may not preclude a party from requesting oral argument, nor deny such a request when made (except in the unusual case or if the motion is denied). Furthermore, the parties remain "entitled" to a hearing until "the right . . . is specifically waived by all parties." *Cole*, 236 Mont. at 418-19, 771 P.2d at 101. However, simply because a party is "entitled" to a hearing, it does not necessarily follow that a district court must schedule one "as a matter of course." Nothing in *Cole*

34

suggests such a rule, and principles of judicial efficiency and fairness counsel *against* interpreting *Cole* in this manner.[2]

¶86   Moreover, there is no requirement in our cases that the party's waiver be made "express[ly]," a term that "implies both explicitness and direct and positive utterance," *Merriam Webster's Collegiate Dictionary* 409.  As explained above, a specific waiver is one which is "free from ambiguity," *Merriam Webster's Collegiate Dictionary* 1128, which can be achieved, in certain narrowly-defined circumstances, without a "direct and positive utterance."

¶87   Harding also asserts that the District Court's scheduling orders come within the meaning of "otherwise" as that term is used in the following passage from *Cole*:  "a district court may not, by rule or *otherwise*, preclude a party from requesting oral argument, nor deny such a request when made by a party opposing the motion unless the motion for summary judgment is denied."  *Cole*, 236 Mont. at 418, 771 P.2d at 101 (emphasis added).  Based on this language, Harding maintains that the court's scheduling orders "limited [its] right to a hearing."  Yet, the court merely informed the parties that a hearing on a motion for summary judgment would be deemed waived unless a written request for hearing was submitted within the time period for filing the briefs on the motion.  Certainly, this admonition neither "preclude[s]" a party from requesting oral argument nor constitutes a preemptive "den[ial]" of such a request.

¶88   In sum, therefore, I conclude that a party's failure to request a summary judgment hearing "within the time period for filing the briefs on the motion" constitutes a specific

---

[2] Incidentally, the foregoing quotation from *Schwabe* is an incorrect restatement of the law set forth in *Linn*, where we stated that *the right* to a summary judgment hearing must be waived, *Linn*, ¶ 8, not that *oral argument* must be waived, *Schwabe*, ¶ 55.

waiver of the party's right to such a hearing where the party has been clearly, unambiguously, and timely informed of this requirement. Such are the facts of the case at hand, since Harding was apprised of the District Court's waiver rule with respect to motions for summary judgment in the two scheduling orders, both of which were provided *prior* to SVKV's filing its motion for summary judgment. Accordingly, Harding specifically waived its right to a hearing by failing to request one in the allotted time frame.

¶89  As noted at the outset, the Court reaches the same conclusion, but on an entirely different basis. Specifically, the foundation of the Court's analysis under Issue One is its manifestly incorrect statement that *Cole* "expressly approved" and "expressly authorized" the trial court practice of requiring parties to request a summary judgment hearing. First, the Court assumes the very conclusion it seeks to prove, asserting that "[i]n *Cole*, we distinguished the *acceptable* trial court practice of requiring parties to request an oral argument or hearing from a rule deterring or precluding a party from making such a request." ¶ 31 (emphasis added). Of course, the Court can provide no pinpoint citation to *Cole* in support of the proposition that the trial court practice of requiring parties to request an oral argument or hearing is "acceptable," because we never said this in *Cole*. Indeed, had we actually done so, then Issue One could be resolved with a single citation to that holding and there would be no need for the Court's 5½ pages of belabored discussion (*see* ¶¶ 26-36). (The Court acknowledges as much with its observation in ¶ 32 and again in ¶ 35 that we did not address in *Cole* or its progeny the waiver issue presented in the case at hand.)

36

¶90    The Court then goes on to assert more forcefully that "in *Cole*, we *expressly approved* requirements for parties to request summary judgment hearings, so long as courts do not preclude or deter such requests." ¶ 31 (emphasis added); *see also* ¶ 33 (claiming that the requirement in the District Court's scheduling orders that a party request a hearing was "expressly authorized" by *Cole*). Where in *Cole* did we "expressly approve[]" or "expressly authorize[]" such requirements? Nowhere, because those were not the facts with which we were presented. Rather, as the lack of pinpoint citations following the Court's assertions reflects, the genesis of this holding is today's majority Opinion.

¶91    The same is also true of the Court's reference in ¶ 35 to "our statement in *Cole* that a court may require parties to request hearings on summary judgment motions." *See also* ¶ 32 (also referring to "the . . . statement [in *Cole*] that a trial court may require a party to apply for a summary judgment hearing and, absent such a request, deem the right to a hearing waived"). We never made such a statement in *Cole*, and it would be shocking to see one there given that the district court had not imposed such a requirement and, thus, we were not presented with facts from which to synthesize such a statement. (Indeed, the district court had a rule *discouraging* requests for a summary judgment hearing.)

¶92    It appears that the departure point for the Court's flight of fancy is our quotation in *Cole* of a 1964 decision by the United States Court of Appeals for the Ninth Circuit. *See* ¶¶ 31, 32 of the Court's Opinion. Specifically, we noted that in connection with oral argument on a Rule 56 motion under the federal counterpart, the Ninth Circuit had held as follows:

> Rule[s] 56(c), 78 and 83, read together, authorize district courts to provide by a rule that a party desiring oral argument on a motion for summary judgment must apply therefore, in the absence of which oral argument will be deemed to have been waived. Such a local rule was involved, and upheld, in *Bagby v. United States* [(8th Cir. 1952), 199 F.2d 233].

*Cole*, 236 Mont. at 418, 771 P.2d at 101 (alterations in original, internal quotation marks omitted) (quoting *Dredge Corporation v. Penny*, 338 F.2d 456, 461-62 (9th Cir. 1964)).

¶93 To the extent this passage from *Dredge Corporation* is actually relevant to the issue at hand, it is worth noting that Montana's Rules of Civil Procedure do not include a version of Fed. R. Civ. P. 78, which the Ninth Circuit cited for the following proposition:

> [F]or the purpose of expediting its business, a district court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition.

*Dredge Corporation*, 338 F.2d at 461 (citing Fed. R. Civ. P. 78). Thus, whereas the foregoing *Dredge Corporation* holding rested on three rules, one of which authorized district courts to "make provision by rule or order for the submission and determination of motions without oral hearing," our decision in *Cole*, by contrast, rested on M. R. Civ. P. 56 *alone*, which contains no such authorization.

¶94 In any event, in a remarkable embellishment of *Cole*, the Court submits in ¶ 31 that the foregoing quote from *Dredge Corporation* constitutes our "express[] approv[al]" of requirements for parties to request summary judgment hearings. Yet, aside from the fact, noted above, that such requirements were not even *implicated* by the facts of *Cole*, the Court's inference is entirely unfounded given the context in which we quoted *Dredge Corporation*.

¶95 Immediately preceding the quotation, we stated as follows:

> [U]nder Rule 56(c), a hearing is contemplated from which the district court will consider not so much legal arguments, but rather whether there exists genuine issues of material fact. Moreover, it is permissible under Rule 56 for the District Court to receive affidavits on the day of the hearing and to take oral evidence, as has been indicated above.

*Cole*, 236 Mont. at 418, 771 P.2d at 101. And immediately after the *Dredge Corporation* quotation, we held as follows:

> In view of the language of Rule 56(c), and having in mind that the granting of such a motion disposes of the action on the merits, with prejudice, a district court may not, by rule or otherwise, preclude a party from requesting oral argument, nor deny such a request when made by a party opposing the motion unless the motion for summary judgment is denied. Even when a party is entitled to oral argument, as a general proposition there will be general circumstances when a court may properly terminate oral argument or even dispense with it and deem the right waived.
>
> We hold, therefore, that unless the right to a hearing on a Rule 56 motion is specifically waived by all parties (and not waived simply by the failure to file briefs) either the movant or the adverse parties are entitled to a hearing under Rule 56 in the ordinary case. There may be an occasion when under the law and the facts adduced, the movant would be so clearly entitled as a matter of law to a summary judgment that a district court might by order dispense with the necessity of a hearing. That, however, is not the kind of order presented to us here.

*Cole*, 236 Mont. at 418-19, 771 P.2d at 101 (citation omitted). Thus, notwithstanding the language of *Dredge Corporation*, we adopted the stringent requirement that the right to a hearing must be "specifically" waived.

¶96 The only other explanation offered by the Court in support of its assertion that we "expressly approved" or "expressly authorized" a waiver-by-inaction rule in *Cole* is the fact that we acknowledged in our discussion that either of the parties could have applied for a hearing. *See* ¶ 31 of the Court's Opinion; *Cole*, 236 Mont. at 417, 771 P.2d at 100.

39

Yet, just because the parties "could have applied" for a hearing does not establish that we approved a policy requiring them to do so or risk waiver.

¶97    Simply stated, the Court's analysis of Issue One rests on a cracked foundation. We could not possibly have held in *Cole* that a district court may require parties to request a summary judgment hearing or risk waiver, since we were not presented with such facts. Thus, *Cole*'s purported "express" approval and authorization of the District Court's scheduling orders here is nothing but the imaginings of the majority in the case at hand.

¶98    For these reasons, I dissent from the Court's flawed and incomplete analysis under Issue One. However, as explained earlier, I agree with the Court's ultimate conclusion that Harding waived its right to a summary judgment hearing by failing to request one in the face of a clear and unambiguous requirement that it do so within the reasonable time frame provided by the District Court.

/S/ JAMES C. NELSON